**UNITED STATES of America**

v.

**Herman WITT, et al., Defendants.**

**No. 82 Cr. 33–CSH.**

United States District Court,
S. D. New York.

June 23, 1982.

John S. Martin, Jr., U. S. Atty. for the S. D. N. Y., New York City, for the U. S.; Denise L. Cote, Stuart Abrams, Asst. U. S. Attys., New York City, of counsel.

Guy Heinemann, New York City, for Devins and Goldman.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The motion of witnesses Isadore M. Devins, M.D. and Joel Goldman, Esq., for an order pursuant to F.R.Crim.P. 17(c) quashing trial subpoenas *duces tecum* served on the witnesses, is denied. The subpoenas in question were issued by the Government on March 9, 1982, and originally made returnable on March 31, 1982, approximately five months before trial. The return date has been adjourned pending resolution of the motion to quash.

Both subpoenas call for the production of any and all records in the witness' posses-sion, custody or control relating to the Greater Boston Stress Relief Center (the "Boston Center"), a professional corporation established under the laws of Massachusetts. The Boston Center is described in the indictment as a "scrip mill" established by the conspirators for the distribution of the drug quaalude. *E.g.*, Indictment, Count One, ¶ 6. The subpoenas are directed at Devins, a licensed physician in the State of Massachusetts who has worked at, and been an officer of, the Boston Center, and at Goldman, who is Devins' attorney and nephew. The Government describes Devins as "the instrument through which the defendants accomplished the illicit distribution of Quaalude." Gov't's Brief at 2. He is alleged to be a general practitioner whose past specialty was obstetrics. He is further alleged to have no specialized training in psychotherapy or psychology.

The motion to quash is two-fold: it attacks the subpoena as a whole, and also raises claims of privilege as to particular documents requested. In the former category, the witnesses contend that the subpoenas are premature in light of the pendency of pretrial defense motions, that no good cause has been shown for the issuance of the subpoenas, and that the subpoenas are being used as discovery devices. With respect to the latter category, Devins asserts two privileges: his own fifth amendment privilege against self-incrimination, and his patients' psychotherapist-patient privilege. Goldman asserts an attorney-client privilege on behalf of his client, Devins. I address these arguments in turn.

### I.

In order to justify pretrial production of documents and the issuance of a Rule 17(c) subpoena, the movant must show:

"(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the

failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' "

*United States v. Nixon*, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103–3104, 41 L.Ed.2d 1039 (1974), *citing United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.1952) (Weinfeld, J.). In the case at bar, the Court is satisfied from the affidavit in support of the Rule 17(c) subpoena and the oral presentation of the prosecutor that she has made a sufficient showing of "good cause" to warrant pretrial production as called for by the subpoenas by clearing the "three hurdles" of "(1) relevance; (2) admissibility; [and] (3) specificity," *Nixon, supra*, 418 U.S. at 700, 94 S.Ct. at 3103, and that the subpoenas in question are not for the impermissible purpose of obtaining pretrial discovery.

Moreover, the fact that there are pretrial motions addressed to the sufficiency of the indictment that have not yet been disposed of by the Court does not bar a 17(c) subpoena under the circumstances of this case. First, even if the Court were to grant all outstanding pretrial motions, and I intimate no view on the merits, some counts, such as Count 2, as to which the Boston Center is relevant would still remain intact. Thus, regardless of the outcome of the motions, the Government will still need the subpoenaed documents. Moreover, given the difficulty inherent in preparing a case of this complexity and length for trial, the benefits that arise from requiring production at this time from a nonparty witness far outweigh the speculative inconveniences.

## II.

Devins asserts his own fifth amendment privilege and his patients' psychotherapist-patient privilege as bars to the demand that he produce patient records in his possession. With respect to the former, the issue is whether the patient records are corporate records as to which no fifth amendment privilege attaches. *See In re Grand Jury Proceedings*, 626 F.2d 1051,

1052 (1st Cir. 1980). I hold that they are. Devins does not dispute that he was at the pertinent time an employee of the Boston Center who treated patients who visited "the Center," Devins Affidavit ¶ 4; in fact, in his affidavit he concedes that patient records "became a part of the records of the Center." *Id.* Accordingly, the patient records could not have been Devins' personal business records and are not subject to Devins' assertion of a fifth amendment privilege.

Turning then to Devins' assertion on behalf of his patients of a psychotherapist-patient privilege, F.R.Evid. 501 provides that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in light of reason and experience." There is no generally recognized physician-patient privilege and Congress has expressly refused to adopt Proposed F.R.Evid. 504, 56 F.R.D. 183, at 240–41, which embodies an attempt to create a more specific psychotherapist-patient privilege. Devins, however, argues that Proposed Rule 504 should be regarded as an expression of "the principles of common law" and "reason and experience," and, as such, invites this Court to recognize a psychotherapist-patient privilege. I decline to do so under the facts of this case.

Devins' prior medical specialty was obstetrics and he was at the pertinent time a general practitioner. He does not profess to being a psychologist or psychiatrist, but claims that he is a psychotherapist within the meaning of Proposed Rule 504(a)(2), 56 F.R.D. at 240, because he was "engaged in the diagnosis or treatment of a mental or emotional condition." Witnesses' Brief at 6. Yet the nature of Devins' practice while at the Boston Center, insofar as it has been revealed to the Court, is not what one commonly thinks of as a psychiatric-type practice. Rather, it appears that Devins met with most patients once, for the purpose of diagnosis and prescribing treatment. As such, he more closely resembles the general practitioner, to whom one complains of stress or family or work-related problems,

during the annual visit. And, as noted above, a general physician-patient privilege is not recognized.

Moreover, even if a psychotherapist-patient privilege is theoretically plausible, the right to invoke it is "not absolute" and must be balanced against other important considerations. *Lora v. Board of Educ.*, 74 F.R.D. 565 (E.D.N.Y.1977) (Weinstein, J.). *See generally United States ex rel. Edney v. Smith*, 425 F.Supp. 1038 (E.D.N.Y.1976) (Weinstein, J.). In the case at bar, the Grand Jury has already found probable cause to believe that the Boston Center is a "scrip mill," used as a means to carry out the alleged conspiracy to evade taxes and to distribute controlled substances. Devins in turn is described by the Government to be the means by which the stress center prescribed the controlled substances. Accordingly, to permit Devins to assert the psychotherapist-patient privilege would be to permit him to obstruct the attempted enforcement of the criminal law, a result which cannot be countenanced. *See Schachter v. Whalen*, 581 F.2d 35, 37 (2d Cir. 1978). As Judge Palmieri noted in refusing to quash a subpoena served upon Astor Medical Services, a purported stress and sleep clinic being investigated for illegal distribution of quaaludes:

> "Like all privileges, whether they affect doctors, lawyers or psychiatrists or psychotherapists where there is ground to believe that the person who has professional standing is essentially involved in a conspiracy with the patient to commit a crime, i.e., to defeat the enforcement of laws dealing with the distribution of controlled substances, the privilege, assuming it exists, must be swept aside in the interest of the much more important public concern with enforcing the criminal laws relating to controlled substances, and that, in substance, is what we have here. . . .
>
> "It would be absurd and incongruous if the organizers of such so-called clinics could interpose between themselves and their customers their hired medical hands or their hired psychiatric hands and then use those hands or employees as a shield to protect themselves and their customers, i.e., patients, from legal scrutiny. "In other words, the grand jury has a right to penetrate this sham. The grand jury has a right to see in this relationship not a bona fide professional relationship between a doctor and his patient, but to see it for what they probably believe it is, a conspiracy to defeat the enforcement of the federal laws with respect to the distribution of controlled substances."

*In Re Grand Jury Subpoena Served Upon Astor Medical Services*, M–11–188 (S.D.N.Y. Feb. 17, 1981) (oral opinion) Transcript at 13–14. I adopt Judge Palmieri's reasoning as my own. It applies *a fortiori*, in view of the grand jury's return of an indictment in the case at bar. I deny Devins' motion to quash the subpoena on grounds of privilege.

### III.

The final issue for resolution is Goldman's assertion of the attorney-client privilege on behalf of his client, Devins. I am willing to accept as true the assertion that there was in fact an attorney-client relationship between Goldman and Devins for some purposes. The Government's affidavit, however, casts doubt on whether any of the subpoenaed documents fall within the permissible scope of the privilege, and Goldman has not specified those documents as to which he asserts the privilege or why. Accordingly, Goldman's motion to quash the subpoena on the grounds of privilege is denied, provided however, that with respect to those particular documents as to which an attorney-client privilege is asserted, Goldman is directed to provide them to the Court forthwith for an *in camera* review, accompanied by a letter explaining the grounds for assertion of the privilege. The Court will make its final ruling on the basis of that submission.

### CONCLUSION

The motion of the witnesses Devins and Goldman to quash the subpoenas *duces tecum* served upon them is denied, except as noted in Part III above.

The record on this motion is hereby OR-DERED unsealed, with the exception of the affidavits of Devins and Goldman, and the *ex parte* affidavit of the Government, which shall remain under seal. As noted in Mr. Heinemann's letter of May 19, 1982, the papers were originally sealed because the entire court file in this case was under seal. The main file having been opened, and the instant motion not relating to grand jury proceedings, I see no reason to continue to keep these papers under seal.

It is So Ordered.