**UNITED STATES of America,**

v.

**Bernard McKEON, Defendant.**

No. CR 82–0419.

United States District Court,
E.D. New York.

March 10, 1983.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Marion Bachrach, Asst. U.S. Atty., Brooklyn, for U.S.

Michael Kennedy, New York City, for defendant.

MEMORANDUM & ORDER

PLATT, District Judge.

On February 24, 1983, the Government served a subpoena allegedly pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure on the defendant's wife, Olive McKeon, which states in pertinent part that:

"You are hereby commanded to appear in the United States District Court for the Eastern District of New York at 225 Cadman Plaza East in the city of Brooklyn, N.Y. on the 7th day of March, 1983 at 10:00 o'clock A.M. and provide handwriting exemplars. Pursuant to FRCP 17(c), the exemplars herein subpoenaed are required to be produced by February 25, 1983."

The original subpoena apparently was presented to and signed by United States District Judge Eugene H. Nickerson.

Both Mr. and Mrs. McKeon have moved to quash the subpoena arguing that (i) the requested exemplars would not be admissible at the upcoming trial of the defendant; (ii) production of the requested exemplars will require testimony from Mrs. McKeon in violation of her marital privilege; (iii) Rule 17(c) was never intended to provide a means of discovery for criminal cases and the Government has not made a sufficient showing for pretrial production; and (iv) the subpoena constitutes harassment.

The defendant has been charged in a nine count indictment with unlawfully exporting 151 guns (Count 1), wilfully causing false facts to be concealed from United States

Customs Service (Count 2), wilfully violating provisions of the Arms Export Control Act, as amended, by causing false representations to be made in export control documents (Count 3), unlawfully transporting in interstate and foreign commerce 13 guns (Count 4), unlawfully delivering to a common carrier for shipment in interstate and foreign commerce 151 guns (Count 5), unlawfully transporting in interstate and foreign commerce 151 guns (Count 6), unlawfully possessing 13 guns not registered to him in the National Firearms Registration and Transfer Record (Count 7), unlawfully possessing 10 guns, having the serial numbers obliterated (Count 8), and conspiring with "others unknown to the Grand Jury" to export from the United States 151 guns contrary to the provisions of the Arms Export Control Act, as amended (Count 9).

In the first trial of this case (in which the jury was unable to agree upon a verdict) defendant's defense was one of lack of knowledge. The Government claims that Mrs. McKeon's handwriting exemplars are necessary to show defendant's knowledge in that they will show that she was a co-conspirator in connection with the conspiracy charge contained in Count 9 of the indictment.

Turning to Mr. and Mrs. McKeon's third contentions, Rule 17(c) of the Federal Rules of Criminal Procedure provides that:

> **(c) For Production of Documentary Evidence and of Objects.** A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

The authorities have held that "a subpoena may issue for the production of documentary evidence and of objects without also calling for testimony." 2 Wright *Federal Practice and Procedure: Criminal 2d* § 274 at 151 and cases cited therein in footnote 4.

The Government issued the instant subpoena, not for the purpose of pretrial discovery but for the purpose of compelling production of handwriting exemplars before and at the trial. Citing *United States v. Nixon,* 418 U.S. 683, 696, 699, 94 S.Ct. 3090, 3101, 3103, 41 L.Ed.2d 1039 (1974), Mr. and Mrs. McKeon maintain nonetheless that production for trial prior to the trial may only be had where the Government has shown:

1) that the documents are relevant and evidentiary;

2) that they are not otherwise procurable reasonably in advance of trial;

3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may unreasonably delay the trial;

4) that the application is made in good faith and is not intended as a general fishing expedition;

418 U.S. at 699–700, 94 S.Ct. at 3103.

The Government claims that if the exemplars prove positive, they will constitute substantial proof to refute the defense of lack of knowledge (made in the first trial through his attorney) and/or that Mrs. McKeon was one of the co-conspirators whose acts in the course of the conspiracy were binding on the defendant. Hence, the Government says the matter sought is relevant and evidentiary. The Government also claims that it has no other access to good handwriting samples of Mrs. McKeon and its only alternative is (i) to subpoena Mrs. McKeon to the witness stand at the trial and have her give such exemplars at that point, with the consequent further delay of the trial or (ii) to impanel another grand jury, declare that she is a subject and subpoena her exemplars before that body

with further consequential delays and the risk of a possible indictment against her.

In view of the relevance and materiality of the matter sought, the Government's application is clearly made in good faith, is not part of a general fishing expedition and is not made to harass the movants herein.

■ Mr. and Mrs. McKeon nonetheless contend that the requested exemplars will not be admissible at the trial and production of the same will require "testimony" from Mrs. McKeon in violation of her marital privilege. The Supreme Court, however, has indicated otherwise. In *Gilbert v. State of California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), that Court held:

> *First.* The taking of the exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of "an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers," and not. "compulsion which makes a suspect or accused the source of 'real or physical evidence' * * *." *Schmerber v. State of California,* 384 U.S. 757, 763–764, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. *United States v. Wade,* [388 U.S. 218] at 222–223, 87 S.Ct. [1926] at 1929–1930 [18 L.Ed.2d 1149].

388 U.S. at 266–267, 87 S.Ct. at 1953.

Thereafter in *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), in a case involving voice exemplars, the same Court noted:

> *Wade* and *Gilbert* definitively refute any contention that the compelled production of the voice exemplars in this case would violate the Fifth Amendment. The voice recordings were to be used solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was to be said.

410 U.S. at 7, 93 S.Ct. at 768. And in the companion case of *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), the Court, in the case of a potential defendant who was directed by a subpoena to produce handwriting and printing exemplars, held that:

> We have held today in *Dionisio,* that a grand jury subpoena is not a "seizure" within the meaning of the Fourth Amendment and, further, that that Amendment is not violated by a grand jury directive compelling production of "physical characteristics" that are "constantly exposed to the public." *Supra,* [410 U.S.] at 9–10, 93 S.Ct., at 769. Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice. See *United States v. Doe (Schwartz),* 2 Cir., 457 F.2d 895, 898–899; *Bradford v. United States,* 5 Cir., 413 F.2d 467, 471–472; cf. *Gilbert v. California,* 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953–1954, 18 L.Ed.2d 1178.

410 U.S. at 21–22, 93 S.Ct. at 775–776.

In its most recent discussion of this question in *United States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980), the Supreme Court summarized the law with respect to the difference between "testimonial" and "non-testimonial" evidence as follows:

> ■ The scope of the "testimonial" [6] or evidentiary duty imposed by common law or statute has traditionally been interpreted as an expansive duty limited principally by relevance and privilege. As this Court described the contours of the duty in *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950): "[P]ersons summoned as witnesses by competent authority have certain

minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery.... We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned." While the Court recognized that certain exemptions would be upheld, the "primary assumption" was that a summoned party must "give what testimony one is capable of giving" absent an exemption "grounded in a substantial individual interest which has been found, through centuries of experience, to outweigh the public interest in the search for truth." *Ibid.*

One application of this broad duty to provide relevant evidence has been the recognition, since early times, of an obligation to provide certain forms of nontestimonial physical evidence.[7] In *Holt v. United States,* 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) (Holmes, J.), the Court found that the common-law evidentiary duty permitted the compulsion of various forms of physical evidence. In *Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), this Court observed that traditionally witnesses could be compelled, in both state and federal courts, to submit to "fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." See also *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In *Gilbert v. California,* 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967), handwriting was held, "like the ... body itself" to be an "identifying physical characteristic," subject to production. In *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), this Court again confirmed that handwriting is in the nature of physical evidence which can be compelled by a grand jury

in the exercise of its subpoena power. See also *United States v. Mullaney,* 32 F. 370 (CC Mo.1887).

\*   \*   \*   \*   \*   \*

Nor is there any constitutional privilege of the taxpayer or other parties that is violated by this construction. Compulsion of handwriting exemplars is neither a search or seizure subject to Fourth Amendment protections, *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), nor testimonial evidence protected by the Fifth Amendment privilege against self-incrimination. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The compulsion of handwriting exemplars has been the subject of far less protection than the compulsion of testimony and documents.[13]

444 U.S. at 712–713 and 718, 100 S.Ct. at 878–879 and 881 (Footnotes omitted).

These authorities make it clear that (as here) a subpoena may be issued under Rule 17(c) of the Federal Rules of Criminal Procedure for the production of handwriting exemplars without calling for testimony or communications and that the mere giving of exemplars to be used solely as a standard for comparison in order to determine whether the witness is the author of certain writings, constitutes non-testimonial physical evidence. It does not constitute testimony or testimonial communications unless it comprises "the content as opposed to the physical character of [the] writing." *United States v. Mara,* 410 U.S. at 22, 93 S.Ct. at 776 footnote. The Government seeks here only the physical character of the writing.

The marital adverse testimony privilege, on which Mr. and Mrs. McKeon rely, is a rule in the Federal courts which grants to the witness-spouse alone the privilege of refusing to testify against a defendant spouse. Relying on *Gilbert v. California, supra,* two Federal District Courts have held that

"The rule does not prohibit giving nontestimonial evidence against a spouse nor otherwise generally protect one spouse

from being used as the source of evidence against the other. The Supreme Court has held that handwriting exemplars are neither communicative nor testimonial * * * "

In re Clark, 461 F.Supp. 1149 (S.D.N.Y. 1978). See also In re Grand Jury Proceedings, Rovner, 377 F.Supp. 954 (E.D.Pa.), aff'd mem, 500 F.2d 1400 (3d Cir.1974), cert. denied, 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 802 (1975).[1]

Thus, given the United States Supreme Court's view that handwriting exemplars (as opposed to the content of same) are neither communicative nor testimonial, it follows that the marital adverse testimony privilege does not preclude a Rule 17(c) subpoena therefor.

Moreover, although the privilege does apply to any questions to the witness-spouse with respect to the authorship of the questioned documents, it does not apply to the testimony of a handwriting expert called by the Government to give his opinion as to the authorship of the questioned document based upon a comparison of the same with the subpoenaed exemplars.

For the foregoing reasons Mr. and Mrs. McKeon's motions to quash the Government's subpoena must be, and the same hereby are, denied.

The defendant's wife, Olive McKeon, is ordered to appear as soon as conveniently possible to produce handwriting and printing exemplars to the Government's designated agent prior to the trial of this case which is hereby tentatively re-scheduled to commence on March 21, 1983, at 9:30 a.m. in Courtroom 7 of this Court before the undersigned.

SO ORDERED.

---

1. Mr. and Mrs. McKeon claim that these cases are distinguishable because they involved the issuance of grand jury subpoenas. Rule 17(c), however, specifically provides for production of matter "at a time prior to the trial" and as indicated above, has been held to encompass "objects without also calling for testimony." We have found no authority which would limit the production of handwriting exemplars to grand jury proceedings and furthermore are unable to discern any basis for any such limitation.