UNITED STATES of America, Plaintiff,

v.

Louis MESSERCOLA and Thomas Acquaviva, Defendants.

Crim. No. 88–282.

United States District Court, D. New Jersey.

Dec. 9, 1988.

J. Fornier Imbert, Asst. U.S. Atty., Newark, N.J., for the Government.

William J. DeMarco, Wayne, N.J., for movant Darryln Cottage.

## OPINION

LECHNER, District Judge.

Darryln Cottage ("Cottage") moves to quash the trial subpoena issued by this court requiring that she submit to photographing by the Federal Bureau of Investigation. Cottage asserts that the subpoena violates her fourth amendment rights and that the Government failed to obtain the subpoena in accordance with Fed.R.Crim.P. 17(c). For the reasons which follow, Cottage's motion is denied.

*Factual Background*

On October 7, 1988, an indictment was returned charging defendants Louis Messercola and Thomas Acquaviva with violations of the Hobbs Act, 18 U.S.C. § 1951. Count One of that indictment charges defendant Messercola with extortion. Specifically, the Government alleges that Messercola conspired "to obtain for another individual a townhouse located at 123 Easedale

Road, Wayne, New Jersey, at a purchase price below market value and with extras at no additional charge from a representative of [a development company] with his consent induced by wrongful use of fear of financial injury and under color of official right." *See* Indictment at ¶ 2.

Based on the representations of the Assistant United States Attorney, it appears that the "individual" referred to in the indictment is Cottage and that she is a close friend of Messercola. *See* Imbert Affidavit in Support of Application for Subpoena ("Imbert Affidavit") ¶ 2; Government's Initial Brief at 2. The Government argues that in order to confirm observations of potential witnesses who have seen Messercola with a woman believed to be Cottage, it is necessary that they be shown a photographic array which includes a photograph of Cottage.

On October 24, 1988, the Government contacted Cottage's attorney and requested that she voluntarily submit to photographing. Counsel for Cottage informed the Government that his client would not submit to photographing unless compelled by subpoena. Imbert Affidavit ¶ 3. A subpoena was issued by this court on October 25, 1988 pursuant to Fed.R.Crim.P. 17(c), directing that Cottage submit to photographing by the Federal Bureau of Investigation. Cottage refused to obey the subpoena.

*Discussion.*

The attack by Cottage on the validity of the subpoena is twofold. First, she charges that the subpoena in this case constitutes an unlawful seizure in violation of the fourth amendment. Cottage next argues that Rule 17(c) does not give a basis for the issuance of the subpoena.

In her initial motion papers to quash the subpoena, Cottage ignored the leading case on the validity of subpoenas for physical evidence, *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).[1] *Dionisio* established that a grand jury subpoena to present physical evidence does not constitute a search and seizure within the meaning of the fourth amendment. 410 U.S. at 9, 93 S.Ct. at 769.

A properly authorized grand jury subpoena is not "that kind of governmental intrusion on privacy against which the fourth amendment affords protection." *Fraser v. United States,* 452 F.2d 616, 620 (7th Cir. 1971). The authority of a grand jury to subpoena citizens to present testimony and evidence is founded upon the longstanding principle that "the public has a right to every [person's] evidence." *Branzburg v. Hayes,* 408 U.S. 665, 682, 92 S.Ct. 2646, 2657, 33 L.Ed.2d 626 (1972). The obligation to give evidence before a grand jury has been deemed the "personal sacrifice" which is "part of the necessary contribution of the individual to the welfare of the public." *Dionisio,* 410 U.S. at 10, 93 S.Ct. at 769 (quoting *Blair v. United States,* 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919)).

Cottage seeks to distinguish *Dionisio* and its progeny by pointing out that the Government subpoena in this case does not issue from a grand jury. However, she provides no legal basis for this distinction. Similar efforts to limit the holding of *Dionisio* to the grand jury process have been unsuccessful. *United States v. Woods,* 544 F.2d 242 (6th Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977); *United States v. Franks,* 511 F.2d 25, 32 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975).[2]

---

1. The Cottage brief cited to outdated support for the proposition that the compulsion of handwriting and fingerprint exemplars constitutes an unreasonable search and seizure in violation of the fourth amendment. Cottage Initial Brief at 1–2 (citing *In re Riccardi,* 337 F.Supp. 253 (D.N. J.1972)).

2. It is noted that Federal Rule of Criminal Procedure 17(c) authorizing the use of a subpoena in federal criminal proceedings makes no differentiation between grand jury and trial subpoenas. Rule 17(c) reads:

   A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior

Although the use of trial subpoenas appears less frequently in reported decisions, the invocation of Rule 17(c) to support the subpoena of physical evidence is well accepted. *See United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (court ordered subpoena of documents from a third party upheld); *United States v. Vanegas*, 112 F.R.D. 235 (D.N.J. 1986) (government's motion for order to compel production of handwriting exemplar pursuant to pretrial Rule 17(c) subpoena granted); *United States v. McKeon*, 558 F.Supp. 1243 (E.D.N.Y.1983) (motion of defendant's wife to quash pretrial Rule 17(c) government subpoena of handwriting exemplar denied); *United States v. Witt*, 542 F.Supp. 696 (S.D.N.Y.), *aff'd* 697 F.2d 301 (2d Cir.1982) (motion to quash pretrial Rule 17(c) subpoena of documents in witness' possession denied). In *Vanegas*, the court explained: "Courts have consistently compelled production of physical evidence such as handwriting exemplars post-indictment and pretrial upon the government's request without reference to any precise procedural mechanism for their production." 112 F.R. D. at 237.

■ The principles supporting the use of grand jury subpoenas apply with equal force to trial subpoenas. The subpoenaed individual has a legal responsibility to comply with lawful and reasonable directives to produce evidence. Cottage, however, argues that the subpoena in this case is not lawful.

■ Characterizing the pretrial subpoena of her photograph as an "investigatory seizure," Cottage invokes *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969) to support the proposition that the detention of a non-defendant in order to obtain physical evidence constitutes a seizure in violation of the fourth amendment. Cottage's application of *Davis* is misplaced.

In *Davis*, it was the initial seizure of the individual that was unconstitutional. As the court in *Dionisio* recognized, *Davis* is "plainly inapposite to a case where the initial restraint does not itself infringe the Fourth Amendment." 410 U.S. at 11, 93 S.Ct. at 770. In the case at bar, the "restraint" imposed upon Cottage—submitting to being photographed—is analogous to the restraint imposed to obtain handwriting, voice and fingerprint exemplars which has been upheld by numerous courts. The compelled production of this type of physical, non-testimonial evidence does not constitute an unreasonable intrusion into protected privacy interests. The fourth amendment provides no protection "for what 'a person knowingly exposes to the public.'" *Id.* at 14, 93 S.Ct. at 771 (quoting *Katz v. United States*, 389 U.S. 347, at 351, 88 S.Ct. 507, at 511, 19 L.Ed.2d 576 (1967)).[3] By compelling Cottage to display her likeness, nothing is revealed "that has not previously been exposed to the public at large." *Dionisio*, 410 U.S. at 14, 93 S.Ct. at 771.

■ The second argument advanced by Cottage rests upon the procedural prerequisites of Rule 17(c). She asserts that the Government failed to provide adequate support for its subpoena application and improperly seeks to use Cottage's photograph in furtherance of its preparation for trial. Cottage correctly points out that Rule 17(c) is not meant to provide additional means of discovery beyond Fed.R.Crim.P. 16. *Vanegas*, 112 F.R.D. at 238 ("Rule 17(c) is a device solely for the obtaining of evidence for the use of the moving party at trial, and which may permit him to examine the material obtained before trial only when, in the discretion of the court, it is necessary that he do so in order to make use of the material as evidence").

to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

**3.** As the Court in *Katz* explained, "[t]he physical characteristics of a person's voice, its tone and

manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear." 389 U.S. at 351, 88 S.Ct. at 511.

Although Rule 16 provides the sole means for discovery in a criminal case, it does not set limits on the scope of evidence which a party may gather. As the Court explained in *Bowman Dairy Co. v. United States:* "No good reason appears to us why evidentiary materials may not be reached by subpoena under Rule 17(c) as long as they are evidentiary. That is not to say that the materials subpoenaed must actually be used in evidence. It is only required that a good faith effort be made to obtain evidence." 341 U.S. 214, 219, 71 S.Ct. 675, 678, 95 L.Ed. 879 (1951).

■ A pretrial subpoena issued in accordance with Rule 17(c) is used as a convenient and time saving tool for trial preparation. Either the Government or defendant can invoke Rule 17(c). *Vanegas,* 112 F.R. D. at 237. The purpose of the rule was to prevent delays during trial by providing "a time and place *before* trial for the inspection of subpoenaed materials." *Bowman Dairy Co.,* 341 U.S. at 220, 71 S.Ct. at 679 (emphasis in original); *United States v. Ferguson,* 37 F.R.D. 6, 7 (D.D.C.1965). Given the difficulties inherent in preparing for a complex and lengthy criminal trial, "the benefits that arise from requiring [pretrial] production ... from a nonparty witness far outweigh the speculative inconveniences." *Witt,* 542 F.Supp. at 698.

■ In order to justify pretrial production of physical evidence and the issuance of a Rule 17(c) subpoena to third parties, the movant must show:

(1) that the [physical evidence is] evidentiary and relevant;

(2) that [it is] not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Cuthbertson,* 651 F.2d 189, 192 (3d Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981) (quoting 418 U.S. at 699–700, 94 S.Ct. at 3103); *Witt,* 542 F.Supp. at 697. If these criteria are met, the subpoena process is not abused as a form of pretrial discovery, but is utilized for the permissible purpose of compelling the production of physical evidence before trial. *McKeon,* 558 F.Supp. at 1244.

In accordance with the requirements of *Nixon,* the Government must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity. *Nixon,* 418 U.S. at 700, 94 S.Ct. at 3103. Before a grand jury subpoena will be issued, the Third Circuit requires that the Government present a "three pronged" affidavit which makes a preliminary showing "that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction and is not sought primarily for another purpose." *In re Grand Jury Proceedings (Schofield II),* 507 F.2d 963, 965 (3d Cir.), *cert. denied* 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). After reviewing the Government's submissions, the district court then has discretion to determine whether the affidavits are sufficient and can require that something more be produced. *Id.*

■ While case law for trial subpoenas does not expressly incorporate the affidavit requirement for a grand jury subpoena under *Schofield II,* the concern that the Government's proffer meet the *Nixon* requirements applies with equal force in this context. By setting forth its specific factual bases for a subpoena, the Government establishes a clear record in support of its application. *See Witt,* 542 F.Supp. at 698 (court noted that the Government submitted an affidavit in support of its Rule 17(c) subpoena in addition to oral representations in open court). Accordingly, while affidavits in support of a trial subpoena are not required, they can serve to buttress the Government's request that a subpoena be issued.

The Government set forth the evidentiary justification for this subpoena in its briefs in opposition to Cottage's motion, in

an affidavit and in representations to the court. The Government expressly represented that the photograph was evidentiary and relevant to establish the relationship between Messercola and Cottage. The Government also represented that a photograph is not otherwise procurable in advance of trial and that a surveillance photograph would not be an adequate substitute. The Government further represented that failure to produce Cottage's photograph would compromise its ability to prepare for trial and cause an unreasonable delay. Finally, it was represented, and it appears, that the application was made in good faith. The Cottage objection that the Government's showing is legally deficient disregards the case law set forth in this opinion.[4]

Because the subpoena requiring that Cottage submit to photographing does not constitute an unlawful search and seizure and was obtained in compliance with Fed.R. Crim.P. 17(c), the motion by Cottage to quash is denied.

SO ORDERED.

---

4. Cottage's reference to *In re Melvin,* 546 F.2d 1 (1st Cir.1976), *motion denied,* 430 U.S. 913, 97 S.Ct. 1323, 51 L.Ed.2d 591 (1977), is also of no avail. The United States Attorney in *In re Melvin* went directly to court seeking an order to compel Melvin's appearance in a line-up without showing a prior grand jury directive. The prosecutor also failed to obtain a trial subpoena in accordance with Rule 17(c). The Government's action short-circuited the usual grand jury procedure and ignored the dictates of Rule 17(c). *In re Melvin* held that a United States Attorney cannot use subpoena powers to gather evidence without the participation of the grand jury. However, this holding was not intended to imply that a non-grand jury (or trial) subpoena is always improper.