# UNITED STATES ET AL. *v.* EUGE

No. 78–1453.  Argued November 26, 1979—Decided February 20, 1980

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, and POWELL, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post,* p. 719. MARSHALL, J., filed a dissenting opinion, *post,* p. 720.

*Stuart A. Smith* argued the cause for the United States et al. With him on the brief were *Acting Solicitor General Wallace, Assistant Attorney General Ferguson, Robert E. Lindsay,* and *Carleton D. Powell.*

*James W. Erwin,* by appointment of the Court, 442 U. S. 915, argued the cause for respondent. With him on the brief were *William L. Hungate* and *Charles A. Newman.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

The United States sued in the District Court seeking enforcement of an Internal Revenue Service summons requiring respondent to appear and provide handwriting exemplars. Enforcement was denied by the Court of Appeals for the Eighth Circuit, 587 F. 2d 25 (1978) (en banc), and we granted certiorari.[1] 441 U. S. 942. We now hold that Con-

---

[1] The Fourth Circuit reached a contrary result in *United States* v. *Rosinsky,* 547 F. 2d 249 (1977). The Sixth Circuit decided this issue in accord with the Eighth Circuit. *United States* v. *Brown,* 536 F. 2d 117 (1976).

gress has empowered the IRS to compel handwriting exemplars under its summons authority conferred by 26 U. S. C. § 7602.

## I

The facts are not in dispute. In October 1977, an agent in the Intelligence Division of the Internal Revenue Service was assigned to investigate respondent's income tax liability for the years 1973 through 1976. Respondent had not filed any tax returns for those years. The Service sought to employ the "bank deposits method" of reconstructing respondent's income for those years, as a means of calculating his tax liability. Under this method of proof, the sums deposited in the taxpayer's bank accounts are scrutinized to determine whether they represent taxable income.

During the course of the investigation, the agent found only two bank accounts registered in respondent's name. Twenty other bank accounts were discovered, however, which the agent had reason to believe were being maintained by respondent under aliases to conceal taxable income. The statements for these accounts were sent to post office boxes held in respondent's name; the signature cards for the accounts listed addresses of properties owned by respondent; and the agent had documented frequent transfers of funds between the accounts.

In an effort to determine whether the sums deposited in these accounts represented income attributable to respondent, the agent issued a summons on October 7, 1977, requiring respondent to appear and execute handwriting exemplars of the various signatures appearing on the bank signature cards. Respondent declined to comply with the summons.

The United States commenced this action under 26 U. S. C. § 7604 (a). The District Court held that the summons should be enforced, ordering respondent to provide 10 handwriting exemplars of 8 different signatures. The Court of Appeals reversed, ruling that the summons authority vested in the Internal Revenue Service under 26 U. S. C. § 7602 does not

authorize the IRS to compel the execution of handwriting exemplars.[2]

## II

The structure and history of the statutory authority of the Internal Revenue Service to summon witnesses to produce evidence necessary for tax investigations has been repeatedly reviewed by this Court in recent years. See *Reisman* v. *Caplin*, 375 U. S. 440 (1964); *United States* v. *Powell*, 379 U. S. 48 (1964); *Donaldson* v. *United States*, 400 U. S. 517 (1971); *United States* v. *Bisceglia*, 420 U. S. 141 (1975); *Fisher* v. *United States*, 425 U. S. 391 (1976); *United States* v. *LaSalle National Bank*, 437 U. S. 298 (1978). Under § 7602, the Secretary of the Treasury, and therefore the IRS as his designate,[3] is authorized to summon individuals to "appear before the Secretary . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry. . . ." [4] The ques-

---

[2] The precise reasons for the court's holding are not clear. In the opinion, the court suggests that the statute does not authorize the IRS to compel a taxpayer to create evidence "out of thin air." 587 F. 2d 25, 27, n. 3 (1978). The opinion also states, however, that it adopts the views expressed in the dissenting opinion in *United States* v. *Campbell*, 524 F. 2d 604, 608 (CA8 1975). The principal reason forwarded in that decision for declining to construe § 7602 to authorize production of handwriting exemplars was the conclusion that such an order would constitute a seizure in violation of the Fourth Amendment. As discussed *infra*, neither rationale supports the conclusion reached by the Court of Appeals.

[3] Responsibility for administration and enforcement of the revenue laws is vested in the Secretary of the Treasury. 26 U. S. C. § 7801 (a). The Internal Revenue Service, however, is organized to carry out those responsibilities for the Secretary. See *Donaldson* v. *United States*, 400 U. S., at 534; 35 Fed. Reg. 2417 *et seq.* (1970). For the purposes of this opinion, we refer to the authority and responsibilities of the Secretary and the Service interchangeably.

[4] "SEC. 7602. Examination of Books and Witnesses.

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person

tion presented here is whether this power to compel a witness to "appear," to produce "other data," and to "give testimony," includes the power to compel the execution of handwriting exemplars. We conclude that it does, for several reasons. While the language may not be explicit in its authorization of handwriting exemplars, the duty to appear and give testimony, a duty imposed by § 7602, has traditionally encompassed a duty to provide some forms of nontestimonial, physical evidence, including handwriting exemplars. Further, this Court has consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies. The authority claimed here is necessary for the effective exercise of the Service's enforcement responsibilities; it is entirely consistent with the statutory language; and it is not in derogation of any constitutional rights or countervailing policies enunciated by Congress.

for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

## A

Through § 7602, Congress has imposed a duty on persons possessing information "relevant or material" to an investigation of federal tax liability to produce that information at the request of the Secretary or his delegate. That duty to provide relevant information expressly obligates the person summoned to produce documentary evidence and to "appear" and "give testimony." Imposition of such an evidentiary obligation is, of course, not a novel innovation attributable to § 7602. The common law has been the source of a comparable evidentiary obligation for centuries. In determining the scope of the obligation Congress intended to impose by use of this language, we have previously analogized, as an interpretive guide, to the common-law duties attaching to the issuance of a testimonial summons. See *United States* v. *Bisceglia, supra,* at 147–148; *United States* v. *Powell, supra,* at 57. Congress, through legislation, may expand or contract the duty imposed,[5] but absent some contrary expression, there is a wealth of history helpful in defining the duties imposed by the issuance of a summons.

The scope of the "testimonial" [6] or evidentiary duty imposed by common law or statute has traditionally been interpreted as an expansive duty limited principally by relevance and privilege. As this Court described the contours of the duty in *United States* v. *Bryan,* 339 U. S. 323, 331 (1950): "[P]ersons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. . . . We have often iterated the importance of this public duty, which every person within

---

[5] Legislative efforts to *expand* the scope of the testimonial obligation would, of course, be limited by the applicable constitutional guarantees.

[6] The word "testimony" has been used loosely in this context to refer to physical and documentary, as well as oral, evidence. See 8 J. Wigmore, Evidence § 2194, p. 76 (McNaughton Rev. 1961).

the jurisdiction of the Government is bound to perform when properly summoned." While the Court recognized that certain exemptions would be upheld, the "primary assumption" was that a summoned party must "give what testimony one is capable of giving" absent an exemption "grounded in a substantial individual interest which has been found, through centuries of experience, to outweigh the public interest in the search for truth." *Ibid.*

One application of this broad duty to provide relevant evidence has been the recognition, since early times, of an obligation to provide certain forms of nontestimonial physical evidence.[7] In *Holt* v. *United States,* 218 U. S. 245, 252–253 (1910) (Holmes, J.), the Court found that the common-law evidentiary duty permitted the compulsion of various forms of physical evidence. In *Schmerber* v. *California,* 384 U. S. 757, 764 (1966), this Court observed that traditionally witnesses could be compelled, in both state and federal courts, to submit to "fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." See also *United States* v. *Wade,* 388 U. S. 218 (1967). In *Gilbert* v. *California,* 388 U. S. 263, 266–267 (1967), handwriting was held, "like the . . . body itself" to be an "identifying physical characteristic," subject to production. In *United States* v. *Dionisio,* 410 U. S. 1 (1973), and *United States* v. *Mara,* 410 U. S. 19 (1973), this Court again confirmed that handwriting is in the nature of physical evidence which can be compelled by a grand jury in the exercise of its **subpoena** power. See also *United States* v. *Mullaney,* 32 F. 370 (CC Mo. 1887).

---

[7] Wigmore has identified the testimonial duty as including an obligation "to disclose for the purpose of justice all that is in his control which can serve the ascertainment of the truth, [and] this duty includes not only mental impressions preserved in his brain and the documents preserved in his hands, but also the corporal facts existing on his *body.*" *Ibid.*

This broad duty to provide most relevant, nonprivileged evidence has not been considered to exist only in the common law. The Court has recognized that by statute "Congress may provide for the performance of this duty." *Blackmer* v. *United States,* 284 U. S. 421, 438 (1932). By imposing an obligation to produce documents as well as to appear and give testimony, we believe the language of § 7602 suggests an intention to codify a broad testimonial obligation, including an obligation to provide some physical evidence relevant and material to a tax investigation, subject to the traditional privileges and limitations. This conclusion seems inherent in the imposition of an obligation to "appear," since an obligation to appear necessarily entails an obligation to display physical features to the summoning authority. Congress thereby authorized the Service to compel the production of some physical evidence, and it is certainly possible to conclude that this authorization extended to the execution of handwriting exemplars, one variety of relevant physical evidence. This construction of the language conforms with the historical notions of the testimonial duty attaching to the issuance of a summons.[8]

## B

Congress certainly could have narrowed the common-law testimonial duty in enacting § 7602, and thus we do not rely solely on the common-law meaning of the statutory language. Section 7602 does not, by its terms, compel the production of handwriting exemplars, and therefore, a narrower interpretation of the duty imposed is not precluded by the actual language of the statute. A narrower interpretation *is* precluded, however, by the precedents of this Court construing that statute. As early as 1911, this Court established the benchmarks for interpreting the authority of the Internal Revenue Service

---

[8] As indicated elsewhere, we do not suggest that the evidentiary obligation codified in § 7602 in all respects conforms to the common law. We rely on the analogy only as one interpretive *guide. Supra,* at 712.

to enforce tax obligations in holding that "the administration of the statute may well be taken to embrace all appropriate measures for its enforcement, [unless] there is . . . substantial reason for assigning to the phrase[s] . . . a narrower interpretation." *United States* v. *Chamberlin,* 219 U. S. 250, 269. This precise mode of construction has consistently been applied by this Court in construing the breadth of the summons authority Congress intended to confer in § 7602. In *United States* v. *Powell,* 379 U. S. 48 (1964), the Court declined to construe § 7605 (b), prohibiting the Secretary from conducting "unnecessary examination[s]," to require probable cause for the issuance of a § 7602 summons. The Court found that "[a]lthough a more stringent interpretation is possible, one which would require some showing of cause for suspecting fraud, we reject such an interpretation because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted. . . ." 379 U. S., at 53–54. In *Donaldson* v. *United States,* 400 U. S. 517 (1971), the Court refused to hold that the summons authority could not be used whenever there was a potential that the civil investigation might later lead to criminal prosecution. In construing the scope of the summons authority, the Court emphasized that it refused to draw the line in a manner that would "stultify enforcement of federal law." *Id.,* at 536. Finally, in *United States* v. *Bisceglia,* 420 U. S. 141 (1975), the Court upheld the Service's authority to issue a John Doe summons to a bank in order to discover the identity of an individual unknown to the Service. The Court reasoned that absent that construction, "no meaningful investigation of such events could be conducted" and thus "[s]ettled principles of statutory interpretation require that we avoid such a result absent unambiguous directions from Congress." *Id.,* at 150. There is thus a formidable line of precedent construing congressional intent to uphold the claimed enforcement authority of the Service if authority is necessary for the effective enforcement of the

revenue laws and is not undercut by contrary legislative purposes.[9]

Applying these principles, we conclude that Congress empowered the Service to seek, and obliged the witness to provide, handwriting exemplars relevant to the investigation. First, there is no question that handwriting exemplars will often be an important evidentiary component in establishing tax liability. The statutory framework, as reviewed in the numerous precedents recited *supra,* imposes on the Secretary of the Treasury, and the IRS as his designate, a broad duty to enforce the tax laws. 26 U. S. C. § 7601 (a). Congress has legislated that the Secretary is "required to make the inquiries, determinations, and assessments of all taxes . . . imposed by this title. . . ." 26 U. S. C. § 6201 (a). Under § 6301 the Secretary "shall collect the taxes imposed by the internal revenue laws." In order to fulfill these duties, the Service will often need to determine whether a particular name is an alias of·a taxpayer. One effective method for resolving that issue is through the use of handwriting exemplars.[10] As we recognized in *Bisceglia,* the IRS does have a need for investigative devices which assist them in ascertaining the identity of tax

---

[9] Congressional intent to provide the Secretary with broad latitude to adopt enforcement techniques helpful in the performance of his tax collection and assessment responsibilities is expressed throughout the Code. In § 6302, for example, Congress has conferred the Secretary with discretion to devise methods of tax collection not specifically provided by statute:

"Whether or not the method of collecting any tax imposed . . . is specifically provided for by this title, any such tax may . . . be collected by . . . other reasonable devices or methods as may be necessary or helpful in securing a complete and proper collection of the tax."

[10] The United States suggests there are numerous uses of handwriting exemplars helpful to the Service. Not only are they useful in identifying the holder of a bank account, but they are also said to be useful for identifying persons who file multiple tax returns under false names claiming income tax refunds, purchase of money orders under false names, and forgery of joint returns to take advantage of lower joint rates.

evaders. In *Bisceglia,* we held, in language relevant to this case:

"[I]f criminal activity is afoot the persons involved may well have used aliases or taken other measures to cover their tracks. Thus, if the Internal Revenue Service is unable to issue a summons to determine the identity of such persons, the broad inquiry authorized by § 7601 will be frustrated in this class of cases. Settled principles of statutory interpretation require that we avoid such a result absent unambiguous directions from Congress." 420 U. S., at 150.

There is certainly nothing in the statutory language,[11] or in the legislative history,[12] precluding the interpretation

---

[11] Respondent argues that the language of § 7602 suggests that it only requires the production of documents already in existence. Since handwriting exemplars must be created by the witness, it is argued that the statute is inapplicable. First, we do not view the exhibition of physical characteristics to be equivalent to the creation of documentary evidence. See *United States* v. *Dionisio,* 410 U. S. 1, 6 (1973). Further, the statute obviously contemplates the transformation of some evidence not formerly tangible, since it obligates the summoned individual to provide testimony. The testimony, of course, creates evidence not previously in existence. We see no difference between the nature of the evidence created when the witness is ordered to talk and that created when he is ordered to write.

We express no opinion on the scope of the Service's authority to otherwise order the witness to generate previously nonexistent documentation under § 7602. The Service in fact has expressly disclaimed any intention to order the creation of documents. The Internal Revenue Manual § 4022.64 (4) (CCH 1977) provides that an administrative summons

"should not require the witness to do anything other than to appear on a given date to give testimony and to bring with him/her existing books, papers and records. A witness cannot be required to prepare or create documents."

The section states, however, that "[t]he giving of exemplars, for example, handwriting exemplars, at an appearance pursuant to a summons is not 'creating a document.'"

[12] The legislative history is simply unilluminating. The only conclusion which that history supports is that Congress did not intend to change the

asserted by the Service. Nor is there any constitutional privilege of the taxpayer or other parties that is violated by this construction. Compulsion of handwriting exemplars is neither a search or seizure subject to Fourth Amendment protections, *United States* v. *Mara,* 410 U. S. 19 (1973), nor testimonial evidence protected by the Fifth Amendment privilege against self-incrimination. *Gilbert* v. *California,* 388 U. S. 263 (1967). The compulsion of handwriting exemplars has been the subject of far less protection than the compulsion of testimony and documents.[13] Since Congress has explicitly established an obligation to provide the more protected forms of evidence, it would seem curious had it chosen not to impose an obligation to produce a form of evidence tradition has found it less important to protect.[14]

---

expanse of the § 7602 summons authority by its amendments in 1954. H. R. Rep. No. 1337, 83d Cong., 2d Sess. (1954); S. Rep. No. 1622, 83d Cong., 2d Sess. (1954). Since there are no pre-1954 interpretations of the statute precluding the issuance of handwriting exemplars, the legislative history sheds no light on the construction intended by Congress.

[13] *Gilbert* v. *California,* 388 U. S. 263 (1967), demonstrates the minimal level of protection afforded handwriting exemplars, and the reasons why such protection is unnecessary. The Court found that production of the exemplars was not subject to the Fifth Amendment privilege, and that their creation did not represent a critical stage requiring counsel. The Court found only a "minimal risk that the absence of counsel might derogate from [a] right to a fair trial." *Id.,* at 267. The Court concluded that "[i]f, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts." *Ibid.*

[14] *Palmer* v. *United States,* 530 F. 2d 787 (CA8 1976), similarly construed 28 U. S. C. § 1826 (a). That statute authorizes the imposition of contempt on witnesses who refuse to "testify or provide other information." The statute does not explicitly authorize contempt sanctions for refusal to execute handwriting exemplars. The court found that the legislative history indicated that Congress had intended, through the use of the language employed in the statute, to "codify present civil contempt practice." Since that practice had included the power to punish a witness for refusing

As we have emphasized in other cases dealing with § 7602 proceedings, the summoned party is entitled to challenge the issuance of the summons in an adversary proceeding in federal court prior to enforcement, and may assert appropriate defenses. See *Bisceglia,* 420 U. S., at 151. The Service must also establish compliance with the good-faith requirements recognized by this Court, *United States* v. *LaSalle National Bank,* 437 U. S., at 318, and with the requirement of § 7605 (b) that "[n]o taxpayer shall be subjected to unnecessary examination or investigation. . . ." These protections are quite sufficient to lead us to refuse to strain to imply additional ones from the neutral language Congress has used in § 7602.

We accordingly reverse the judgment of the Court of Appeals refusing enforcement of the summons.

*Reversed.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL and MR. JUSTICE STEVENS join, dissenting.

The Internal Revenue Service, unlike common-law courts, has only such authority as Congress gives it. Cf. *United States* v. *LaSalle National Bank,* 437 U. S. 298, 307 (1978) (validity of Service summonses depends on "whether they were among those authorized by Congress"). Congress has granted the Service authority to summon individuals "to appear before the Secretary . . . at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry. . . ." 26 U. S. C. § 7602. The Court holds today that this authority to compel "testimony" includes authority to compel the creation of handwriting exemplars.[1]

to create a handwriting exemplar, the court reasoned that Congress must have thought this phrasing adequate to cover production of handwriting samples.

[1] The Court also places some reliance on the word "appear," which the Court suggests "necessarily entails an obligation to display physical fea-

The Court, however, is unable to point to anything in the statutory language or legislative history that even suggests that the obligation to "give testimony" includes an obligation to *create* a handwriting exemplar. Indeed, the Court concedes, as it must, that a handwriting exemplar is a kind of *nontestimonial* physical evidence.[2] Certainly, Congress has the power to authorize the Service to compel the creation of exemplars, but it has not chosen to do so in § 7602.[3] Accordingly, I dissent.

MR. JUSTICE MARSHALL, dissenting.

In my view, the Fifth Amendment's privilege against compulsory self-incrimination prohibits the Government from requiring a person to provide handwriting exemplars. As I stated in my dissenting opinion in *United States* v. *Mara*, 410 U. S. 19, 33 (1973), "I cannot accept the notion that the Government can compel a man to cooperate affirmatively in securing incriminating evidence when that evidence could not be obtained without the cooperation of the suspect." The Fifth Amendment privilege is rooted in "the basic stream of religious and political principle[,] . . . reflects the limits of the individual's attornment to the state," *In re Gault*, 387

---

tures to the summoning authority." *Ante,* at 714. Plainly "appear" adds nothing to the authority of the Service. The word is used only to indicate that the person summoned must deliver the requested testimony or documents at the designated time and place.

[2] The Court's use of the label "nontestimonial" is meaningful, for "[t]estimony properly means only such evidence as is delivered by a witness . . . , either orally or in the form of affidavits or depositions." Black's Law Dictionary 1324 (5th ed. 1979). Testimony is a statement of knowledge or belief by a witness as opposed to the mere display of a physical characteristic.

[3] Even if I thought the statute were ambiguous, I would reach the same result because I strongly believe that "until Congress has stated otherwise, our duty to protect the rights of the individual should hold sway over the interest in more effective law enforcement." *Dalia* v. *United States,* 441 U. S. 238, 263 (1979) (STEVENS, J., dissenting).

U. S. 1, 47 (1967), and embodies the "respect a government—state or federal—must accord to the dignity and integrity of its citizens," *Miranda* v. *Arizona,* 384 U. S. 436, 460 (1966). I continue to believe, then, that "[i]t is only by prohibiting the Government from compelling an individual to cooperate affirmatively in securing incriminating evidence which could not be obtained without his active assistance, that 'the inviolability of the human personality' is assured." *United States* v. *Mara, supra,* at 34–35 (dissenting opinion) (quoting *Miranda* v. *Arizona, supra,* at 460).

In order to avoid this constitutional problem, I agree with my Brother BRENNAN, see *ante,* p. 719, that 26 U. S. C. § 7602 should be construed not to permit Internal Revenue Service personnel to compel the production of handwriting exemplars. Accordingly, I dissent.