770 F.2d 167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, AND MICHAEL R. MURPHY, INTERNAL
REVENUE AGENT, PLAINTIFF-APPELLEES,
v.
UNIVERSAL CHRISTIAN CHRUCH, ET AL., DEFENDANTS,
VINCENT M. COOMES, PASTOR, DEFENDANT-APPELLANT.
 NO. 83-5039
 United States Court of Appeals, Sixth Circuit.
 7/19/85
 
 W.D.Ky.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 BEFORE: KENNEDY and WELLFORD, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The Internal Revenue Service ('IRS') seeks enforcement of a summons directing Vincent Coomes to produce various documents of the Universal Christian Church, for which he claims to be Pastor, Presiding Bishop, and Chairman of the Board of Directors.[1] After the district court sought to avoid finding Coomes in contempt for his failure to respond, including the appointment of an attorney to represent him and having a psychiatrist examine him, the government and Coomes' court appointed counsel entered a joint stipulation of dismissal. Coomes, however, moved to set aside the order of dismissal, so that he could assert his First Amendment rights and achieve another negotiated resolution of the case.
 
 
 2
 In 1979, the IRS commenced an investigation into the tax liability of Coomes' Universal Christian Church ('UCC'). Coomes' liability for 1976 through 1978 was under investigation, and his liability could be affected by the outcome of the UCC investigation. UCC is named as a party to this appeal but, in fact, there is no appeal by that entity, and it is not a party before this court.
 
 
 3
 Coomes had claimed charitable deductions for contributions made to UCC in prior years, and has unsuccessfully petitioned the Tax Court for redetermination of his tax liability on three occasions. See Coomes v. Commissioner, 42 T.C.M (CCH) 394 (1981); Coomes v. Commissioner, 37 T.C.M. (CCH) 1262 (1978), aff'd 79-1 U.S.T.C. p9401 (May 16, 1979); Coomes v. Commissioner, 37 T.C.M. (CCH) 1262, aff'd 572 F.2d 554 (6th Cir. 1978). In each case, the Tax Court found that Coomes failed to meet his burden of proof with respect to the claimed deductions because of his refusal on first amendment grounds to comply with subpoenas duces tecum to produce USS's by-laws, books, and financial records.
 
 
 4
 On December 19, 1979, the IRS issued a summons directing UCC and Coomes to appear before the IRS to give testimony and produce a number of records. When Coomes refused to produce the records sought, the IRS sought enforcement, and the district court directed Coomes to show cause why the summons should not be enforced. Coomes was ordered to appear before the court for a hearing, and the court ordered him to produce the documents or be held in contempt. Coomes filed a UCC Resolution (referred to in footnote 1), in which the Church resolved, inter alia:
 
 
 5
 That the Church nor the Most Reverend Mr. Coomes will intentionally flaunt the authority of the courts for the sake of flaunting the courts nor is it the position of the Church to hold the Court in contempt [sic!].
 
 
 6
 The district court then appointed an attorney to represent Coomes. After a hearing the court held Coomes in contempt, but directed that Dr. Green, a psychiatrist, examine Coomes to see if he had the capacity to understand the court's orders, and to see if he suffered from a delusion that 'because of his sincere religious faith and beliefs he would suffer damnation or some other grievous injury should he comply with the orders of the court'. Based on Dr. Green's report, which indicated that Coomes is psychotic and suffering from paranoid delusions of long duration, Coomes' court appointed attorney moved to set aside the contempt order. A hearing on this motion was never held, however, because the government and Coomes' court appointed counsel filed a joint stipulation of dismissal. Coomes, however, moved to set aside the stipulated order of dismissal which he charged was 'the convoluted star-chamber dismissal of the . . . action.'
 
 
 7
 In a carefully reasoned opinion, the district court granted Coomes' motion to set aside the order of dismissal noting:
 
 
 8
 the Court has examined the report of Dr. Lawrence P. Green dated July 16, 1980 concerning his examination of Rev. Coomes. That report indicates that, although the defendant suffers from a paranoid delusional system and is psychotic, and is a paranoid schizophrenic of long duration, he firmly believes that he would rather suffer the consequences of the law than to suffer the eternal damnation of God. The report also indicates that Dr. Green believes that Rev. Coomes has excellent comprehension of the orders of the Court and the implications of the orders if he should or should not comply.
 
 
 9
 In light of these findings by Dr. Green, and the Court's observation of the defendant, the Court must conclude that defendant has the mental ability to make a knowing and volunary decision to have set aside an order which had great material benefits for him, but which he wishes to have set aside because of his religious beliefs.
 
 
 10
 On December 10, 1982, the court held Coomes in contempt, but permitted him to remain at liberty after posting minimal bail, pending his appeal. Coomes' first notice of appeal was dismissed for want of prosecution. Later this court granted appellant's motion to reinstate his appeal.
 
 
 11
 I. Does the IRS have authority to summons church records?
 
 
 12
 The IRS's investigation in the instant suit is not primarily directed at determining whether the UCC should be granted IRC Sec. 501(c)(3) exempt status, rather the IRS seeks to determine the UCC's proper tax liability and to determine the deductibility of Coomes' claimed of Sec. 170 'contributions.' 'Coomes (also represented by counsel on appeal) first claims that the IRS cannot investigate the UCC unless the UCC claims tax exempt status. The IRS is authorized to investigate the tax liability of any 'person'. See IRC Sec. 7601. The Code broadly defines 'person' as 'includ[ing] an individual, a trust, estate, partnership, association, company or corporation.' IRC Sec. 7701(a)(1). Thus, if an entity such as the UCC has not been paying any taxes or is claimed by a taxpayer to be the object of charitable contributions, the IRS is empowered to investigate the status of the claimed charitable (or religious) entity, regardless of whether or not it claims to be tax exempt. See, e.g., Donaldson v. United States, 400 U.S. 517, 523-23 (1971) (IRS can subpoena third parties to determine the tax liability of a person under investigation); see also, United States v. Euge, 444 U.S. 707, 710-11 (1979) (IRS empowered to summon witnesses to produce evidence necessary for tax investigations).
 
 
 13
 In order to obtain compliance with their summonses, the IRS may seek enforcement in district court as long as its use of the summons is in 'good-faith pursuit' of the purposes authorized by Congress. IRC Secs. 7402(b) and 7604(a); United States v. Powell, 379 U.S. 48, 58 (1964); United States v. LaSalle National Bank, 437 U.S. 298, 308 (1978). A good-faith showing may be made through submission of an affidavit by the agent who issued the summons. United States v. Kis, 658 F.2d 526, 535-36 (7th Cir. 1981). Indeed, the IRS need only make a minimal showing that the summons was issued for a proper purpose, that the material sought is relevant and not already in the government's possession, and that the proper administrative steps have been taken. United States v. Will, 671 F.2d 963, 966 (6th Cir. 1982). The affidavit sworn out by IRS agent Michael Murphy, who is investigating this case, meets these requirements.
 
 
 14
 United States v. Dykema, 666 F.2d 1076 (7th Cir. 1981), appears on point. The district court had denied enforcement of an IRS summons directed to Dykema, pastor of the Christian Liberty Church. While it is unclear in Dykema whether the church concerned had initiated a request for tax-exempt status, among the objects of the broad IRS summons for church records was to determine whether it was a 'proper recipient of deductible contributions' and whether there was unrelated and unsupported business income involved. 666 F.2d at 1098. That court held clearly that 'records of other parties, including his employer, even though it be a church, may be examined if they are such as to throw light on his individual tax liability.' Id. at 1098, citing United States v. Grayson Co. State Bank, 656 F.2d 1070, 1976 (5th Cir. 1981).
 
 Grayson Co. State Bank held that
 
 15
 [I]n enforcement of an IRS summons under Section 7602 when the summons authority is necessary for 'the effective performance of congressionally imposed responsibilities to enforce the tax code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies.'
 
 
 16
 656 F.2d at 1073, quoting United States v. Euge, 444 U.S. 707, 711 (1980). The defense to enforcement of the summons in the Grayson Co. State Bank case was based upon religious objection to producing bank records of a church. Once the tests of good faith, relevant inquiry and proper administrative steps were met in the issuance of the summons 'to investigate the correct tax liability of the minister,' the Grayson court held that the first amendment did not preclude enforcement of a summons to obtain complete bank records relating to financial activities of the church. 656 F.2d at 1073.
 
 
 17
 Accordingly, we hold that IRS here had ample authority to issue the summons in respect to a valid tax investigation, which was initiated in good faith; and that the summons should be enforced after proper administrative procedures had been followed. This authority under the Tax Code is upheld despite the first amendment defense raised by Coomes and despite the fact that the church itself did not instigate the IRS inquiry or investigation by seeking a tax exempt status certificate:
 
 
 18
 [a]llowing the IRS access to reformation to determine the correct tax liability of the taxpayer, the church's minister, does not restrict the church's freedom to espouse religious doctrine nor to solicit members or support.
 
 
 19
 United States v. Grayson Co. State Bank, 656 F.2d at 1074, citing United States v. Holmes, 614 F.2d 985, 989 (5th Cir. 1980).
 
 
 20
 II. Is the contempt order enforceable?
 
 
 21
 We now turn our attention to the question of whether the district court correctly held Coomes in contempt for his failure to comply with its enforcement order, notwithstanding Coomes' psychological problems. The district court, after a hearing, found that Coomes understands the consequences of his act. Since Coomes is not subject to criminal contempt[2] there is no intent element required, and in fact, civil contempt may be imposed even though the party held in contempt did not act willfully. McComb v. Jacksonville Paper Co., 336 U.S. 187 (1949); Aero Corp. v. Department of the Navy, 558 F. Supp. 404, 428 (1983). Whether Coomes's belief that he should resist turning over Church records is sincere or not, the finding of sufficient mental comprehension is not clearly erroneous. The finding that Coomes is capable of complying with the court's order and of understanding the consequences if he does not, is also not clearly erroneous.
 
 
 22
 The inability of a contemnor to comply with a court's order is a defense to coercive imprisonment for contempt. See Shillitani v. United States, 384 U.S. 364, 371 (1966); Maggio v. Zeitz, 333 U.S. 56, 76 (1948). These cases, however, suggest only that physical inability is a defense, not an inaility due to fear of a greater punishment from an Authority above and beyond the courts. For example, a witness who refuses to testify in a RICO case for fear of reprisal by the Mafia still may be held in civil contempt. United States v. Romano, 684 F.2d 1057, 1065 n.7 (2d Cir. 1982), Cert. denied, 103 S. Ct. 375 (1982). We recognize the complicating factor in this controversy due to Coomes' diagnosed mental disorder, but the fact remains that the district court's ample opportunity to observe plaintiff together with the psychiatrist's opinion of his understanding about consequences of refusal to obey the court's order is an adequate basis to uphold the contempt order. Regardless then of Coomes' assertion of religious 'persecution', particularly in light of the paranoid mental state overtones, the enforcement of the summons is not a constitutional infringement. The court below did not abuse its discretion in holding Coomes in civil contempt for his persistent refusal to deliver records pursuant to a valid summons, or to file an appropriate response if he claims there are no such records in existence.
 
 
 23
 III. Was the summons too broad?
 
 
 24
 While we question Coomes' standing to challenge whether the summons issued to the church is over-broad, we doubt that IRS should properly inquire about 'applications for church membership.' Accordingly, the judgment of the district court is AFFIRMED. We hope that Mr. Coomes will comply with the court's order so that there will be no need for incarceration.
 
 
 
 [1]
 According to the affidavit of IRS agent Murphy, the 'only information' in response to the I.R.S. summons in this case was a resolution of the 'Board of Directors of the Universal Christian Church' convened pursuant to certain 'By-Laws' that, among other things:
 1) 'the Church has not, and cannot make application for tax exempt status.'
 2) 'the Church, by secular law, is tax exempt.'
 3) 'Most Reverend Mr. Coomes, or any other person, is forbidden to give any documents or information to any governmental official or agency . . ..'
 The 'resolution' was signed 'For the Universal Christian Church' by 'Most Reverend Vincent Coomes, President Bishop and Chairman, Board of Directors.'
 
 
 [2]
 The contempt in the instant case is civil in nature. See Shillitani v. United States, 384 U.S. 364 (1966) (conditional nature of sentences renders actions civil contempt); Gompers v. Buck's Stove & Range Co., 221 U.S. 418 (1911); DeParcq v. United States District Court, 235 F.2d 692, 699 (8th Cir. 1956), distinguishing civil and criminal contempt as follows:
 (1) Refusal to do an act commanded is civil contempt, while doing a forbidden act is criminal contempt; (2) Punishment for criminal contempt is unconditional, while the judgment for civil contempt is conditional in nature and can be terminated if the contemnor purges himself of the contempt [civil contemnor carries the keys to his prison]; (3) Civil contempt proceedings are entitled as a part of the main cause, while criminal contempt actions are brought in the name of the United States; and (4) The notice in a criminal contempt proceeding must state that the proceeding is criminal in nature.
 Clearly then Coomes is subject only to civil contempt in this proceeding. See Fed. R. Civ. P. 45(f) (failure to obey a subpoena is civil contempt).