536 So.2d 272 (1988)
James G. WYCHE, Petitioner,
v.
The STATE of Florida, Respondent.
No. 88-384.
District Court of Appeal of Florida, Third District.
November 29, 1988.
Rehearing Denied February 7, 1989.
Ferrell, Williams, and Douglas Williams, Miami, for petitioner.
Janet Reno, State Atty., and Paul Mendelson and Fredric A. Kerstein, Asst. State Attys., Robert A. Butterworth, Atty. Gen., and Steven T. Scott, Asst. Atty. Gen., for respondent.
Before NESBITT, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
In this petition for writ of certiorari, Wyche asks us to quash a trial court order enforcing a subpoena issued at the request and upon the application of the state attorney. Although he does not challenge the right of the state attorney to subpoena witnesses to appear and testify before her,[1] *273 Wyche complains that the instant subpoena is beyond the state attorney's statutory authority and, in calling for Wyche "to provide standards of his fingerprints" without probable cause, is unconstitutional.[2]

I.
Wyche's argument that the subpoena is unauthorized is based on his reading of the pertinent statute and rule. He says that Section 27.04, Florida Statutes, expressly permits the state attorney to summon witnesses to appear "to testify" and says nothing about producing non-testimonial evidence, much less fingerprints. Although he concedes that the statute has been construed to authorize the issuance of a subpoena duces tecum, e.g., State v. Jett, 358 So.2d 875 (Fla. 3d DCA 1978), he contends that the statute should read in pari materia with Florida Rule of Criminal Procedure 3.220(b)(1)(iii), which permits the fingerprinting of an accused only after the filing of an indictment or information and then only by order of a judicial officer.[3] Wyche claims that when the statute is read together with the rule, it is plain that the exclusive means by which the State may obtain his fingerprints is under the rule after he has been charged with a crime. We reject Wyche's argument.
First, we do not agree that a rule of criminal procedure which patently is designed to provide the prosecution with a discovery right after the filing of an indictment or information should be read to limit  or have any relevance to  a prosecutor's preexisting statutory power to investigate a criminal case before formal charges are filed. In this respect, we entirely agree with State v. Acuna, 1 Fla. Supp.2d 28 (11th Cir.Ct. 1982), in which the Circuit Court of the Eleventh Judicial Circuit, sitting in its appellate capacity, held that the state attorney may subpoena a person for the purpose of compelling him to pose for photographs prior to the filing of an information. In so holding, the court rejected the argument  identical to Wyche's  that Rule 3.220(b) is "the only avenue" by which the State may compel an individual to provide evidence of physical characteristics.
"F.R.Cr.P. 3.220 was taken from A.B.A. Standard 3.1 relating to Discovery and Procedure Before Trial. The commentary thereto points out that the purpose of the subject provision is to establish `procedures by which the prosecutor can discover information about the person of the accused after charges are filed.' The commentary suggests that the rule was not designed to affect the prosecutorial investigative process which normally occurs (and is completed) prior to the filing of charges."

State v. Acuna, 1 Fla. Supp.2d at 30 n. 4.
Second, although Wyche correctly observes that Section 27.04 says nothing about the production of nontestimonial evidence, the statute, as we have noted, has been uniformly held to authorize the use of subpoenae duces tecum in criminal investigations. State v. National Research Systems, Inc., 459 So.2d 1134 (Fla. 3d DCA 1984); State v. Jett, 358 So.2d 875 (Fla. 3d DCA 1978); Imparato v. Spicola, 238 So.2d 503 *274 (Fla. 2d DCA 1970). Where the investigating authority is, as here, empowered to summon an individual to produce books, papers, records, and like data, and to testify, it is also empowered to summon an individual to produce physical evidence such as, in the present case, fingerprints. United States v. Euge, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980). As the Supreme Court has explained:
"While the language [of 26 U.S.C. § 7602 authorizing the Internal Revenue Service to summon an individual to `produce such books, papers, records, or other data, and to give testimony, under oath, as may be relevant or material to such inquiry'] may not be explicit in its authorization of handwriting exemplars, the duty to appear and give testimony, a duty imposed by § 7602, has traditionally encompassed a duty to provide some forms of non-testimonial, physical evidence, including handwriting exemplars."

United States v. Euge, 444 U.S. at 711, 100 S.Ct. at 878, 63 L.Ed.2d at 147.
Third, it is generally recognized that the state attorney, in carrying out her responsibility of investigating and prosecuting violations of the criminal laws of this state, Fla. Const. Art. I, § 15 and Art. V, § 17, acts as a one-person grand jury. Imparato v. Spicola, 238 So.2d at 506; Widener v. Croft, 184 So.2d 444, 445-46 (Fla. 4th DCA 1966). While there are unquestionably differences between a federal grand jury and a state attorney acting as a one-person grand jury, those differences do not lie in the area of the powers of either to investigate crimes committed within their respective jurisdictions. Thus, because a federal grand jury investigating possible criminal violations plainly has the right to request the issuance of a subpoena for the purpose of compelling a person to provide nontestimonial physical evidence, United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (handwriting specimen); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (voice exemplar), there is no impediment to a state attorney compelling the production of the same evidence when acting as the State's counterpart to a federal grand jury.

II.
Wyche's argument that the subpoena goes too far is grounded on his contention that even if authorized by Section 27.04, Florida Statutes, the compelled taking of his fingerprints violates his constitutionally guaranteed right to be free from self-incrimination and unreasonable seizures.

A.
We will not linger on Wyche's self-incrimination claim. It is quite enough to say that a "compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination," United States v. Dionisio, 410 U.S. at 5-6, 93 S.Ct. at 767, 35 L.Ed.2d at 74; United States v. Euge, 444 U.S. at 718, 100 S.Ct. at 881, 63 L.Ed.2d at 151; United States v. Mara, 410 U.S. at 21, 93 S.Ct. at 775-76, 35 L.Ed.2d at 103; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), and that Wyche's appearance in response to the subpoena is without testimonial significance. See Doe v. United States, ___ U.S. ___, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988).

B.
Wyche's claim that compelling him to appear pursuant to a subpoena for the taking of his fingerprints constitutes an unreasonable seizure under the Fourth Amendment to the United States Constitution (and, it follows, Article I, Section 12 of the Florida Constitution) fares no better.
As we have said, there is no significant distinction to be drawn between being summoned to appear before a federal grand jury and a state attorney acting as a one-person grand jury. Thus, the holdings of the United States Supreme Court (binding on Florida courts by Article I, Section 12 of our state constitution) relating to subpoenas to appear before federal grand juries control the present case.
*275 In United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67, the Court considered Dionisio's claim that a grand jury subpoena compelling him to produce a voice exemplar was an unreasonable seizure under the fourth amendment. It decided, first, that the compulsion to appear before a grand jury pursuant to a subpoena is "not a `seizure' in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome," 410 U.S. at 9, 93 S.Ct. at 769, 35 L.Ed.2d at 76; and, second, that the subsequent directive to make a voice exemplar does not violate the fourth amendment because there is no expectation of privacy in this physical characteristic that warrants constitutional protection. Any argument that fingerprints, unlike voice exemplars, or handwriting, see United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99, deserve greater constitutional protection was set to rest in Dionisio, where, comparing voice exemplars to fingerprinting, the Court said:
"Rather, this is like the fingerprinting in Davis [v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969)], where, though the initial dragnet detentions were constitutionally impermissible, we noted that the fingerprinting itself `involves none of the probing into an individual's private life and thoughts that marks an interrogation or search.'"

United States v. Dionisio, 410 U.S. at 15, 93 S.Ct. at 772, 35 L.Ed.2d at 80 (citations omitted).
Here, because neither the initial compulsion to appear nor the directive to be fingerprinted implicates the fourth amendment, there is no need, despite Wyche's urging to the contrary, for the State to make some preliminary showing of reasonableness or to establish probable cause. United States v. Mara, 410 U.S. at 22, 93 S.Ct. at 776, 35 L.Ed.2d at 103. But see Saracusa v. State, 528 So.2d 520 (Fla. 4th DCA 1988).[4]
CERTIORARI DENIED.
NOTES
[1] Section 27.04, Florida Statutes (1987), provides:

"Summoning and examining witnesses for state.  The state attorney shall have summoned all witnesses required on behalf of the state; and he is allowed the process of his court to summon witnesses from throughout the state to appear before him in or out of term time at such convenient places in the state attorney's judicial circuit and at such convenient times as may be designated in the summons, to testify before him as to any violation of the criminal law upon which they may be interrogated, and he is empowered to administer oaths to all witnesses summoned to testify by the process of his court or who may voluntarily appear before him to testify as to any violation or violations of the criminal law."
[2] The operative language of the subpoena commands that Wyche be summoned to appear before the state attorney "to testify and the truth to speak in behalf of the STATE in a certain matter before said State Attorney pending and undetermined and to provide standards of his fingerprints." (emphasis supplied).
[3] Rule 3.220(b)(1) reads:

"(b) Disclosure to Prosecution.
"(1) After the filing of the indictment or information and subject to constitutional limitations, a judicial officer may require the accused to:
"(i) Appear in a line-up;
"(ii) Speak for identification by witnesses to an offense;
"(iii) Be fingerprinted;
"(iv) Pose for photographs not involving reenactment of a scene;
"(v) Try on articles of clothing;
"(vi) Permit the taking of specimens of material under his fingernails;
"(vii) Permit the taking of samples of his blood, hair and other materials of his body which involves no unreasonable intrusion thereof;
"(viii) Provide specimens of his handwriting; and
"(ix) Submit to a reasonable physical or medical inspection of his body."
[4] In Saracusa v. State, the Fourth District quashed a trial court order compelling Saracusa, a prisoner, to appear in a lineup and to submit to the taking of a blood sample "in connection with the state's investigation of several crimes which are unrelated to the charges for which he is being held." 528 So.2d at 521 (emphasis in original). The stated bases of the court's decision were that (1) the State's motion to compel relied on Florida's criminal discovery rule, Fla.R.Crim.P. 3.220(b)(1)(i) and (vii), which is applicable only after an information or indictment has been filed against the defendant on the charge being investigated, and (2) since the charge under investigation was unrelated to the charge for which Saracusa was being held, it was necessary for the State to make a showing that probable cause existed for the taking of the blood sample and the compelled appearance in a lineup.

Although we agree with Saracusa that the State erroneously invoked Rule 3.220, its invocation of this rule was completely meaningless. Clearly, under Dionisio and its kin and progeny, the trial court's order compelling Saracusa to submit to a blood test and appear in a lineup did not implicate any fourth amendment concerns, and no showing of probable cause was necessary. The Fourth District's reliance upon Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), in support of its holding that the defendant's constitutional rights were violated, is misplaced. Although fourth amendment violations were found to have occurred in both Davis and Hayes, it was not the fingerprinting of those defendants that was the intrusive activity that impinged on the defendants' constitutional rights. Instead, as the decisions in Davis and Hayes make clear, it was the manner in which the law enforcement authorities initially seized the persons of the defendants that offended the fourth amendment, rendering all things later taken from the defendants tainted by the initial illegality.