634 So.2d 613 (1994)
John DOE, Petitioner,
v.
STATE of Florida, Respondent.
No. 79508.
Supreme Court of Florida.
March 31, 1994.
*614 Tony C. Dodds, Law Office of T.W. Weeks, III, Lakeland, for petitioner.
Robert A. Butterworth, Atty. Gen., and Stephen A. Baker, Asst. Atty. Gen., Tampa, for respondent.
PER CURIAM.
We have for review State v. Doe, 592 So.2d 1121 (Fla. 2d DCA 1991), wherein the court recognized conflict with Saracusa v. State, 528 So.2d 520 (Fla. 4th DCA 1988). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We approve doe.
The state attorney's office in Lakeland served upon Shernequa Pace a "State Attorney's Investigative Witness Subpoena" on July 10, 1991, in the case of "State of Florida vs. John Doe," commanding Ms. Pace to appear at the state attorney's office to supply fingerprint samples and handwriting exemplars:
YOU ARE HEREBY COMMANDED TO be and appear at the State Attorney's Office, Lakeland Branch, Kress Building, 109 N. Kentucky Ave., Lakeland, Florida on:
DATE: JULY 25, 1991
TIME: 10:00 A.M.
ASA: MICHAEL P. CUSICK
to supply fingerprint samples and handwriting exemplars. IF YOU CANNOT OR WILL NOT APPEAR AS DIRECTED OR IF YOU HAVE ANY QUESTIONS YOU MUST CALL THE ASSISTANT STATE ATTORNEY LISTED ABOVE AT 534-4800 PRIOR TO THE REQUIRED TIME OF ATTENDANCE AND ADVISE HIM/HER OF YOUR INTENTIONS. YOU MAY ALSO APPEAR BEFORE A CIRCUIT COURT JUDGE TO CHALLENGE THIS SUBPOENA. IF YOU FAIL TO OBEY THIS SUBPOENA YOU MAY BE SUMMONED BEFORE A JUDGE OF THIS COURT AND THE STATE ATTORNEY MAY SEEK AN ORDER COMPELLING YOUR ATTENDANCE.
The trial court concluded that the subpoena violated Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), wherein the United States Supreme Court ruled that the act of accosting a suspect for fingerprinting implicates constitutionally protected privacy interests:
There is no doubt that at some point in the investigative process, police procedures can qualitatively and quantitatively be so intrusive with respect to a suspect's ... privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments. And our view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person... and transport him to the police station, where he is detained, although briefly, for investigative purposes.
Id. at 815-16, 105 S.Ct. at 1646-47 (citations omitted).
The Second District Court of Appeal granted the State's petition for certiorari and reversed, holding that a subpoena for fingerprinting and voice exemplars violates no constitutional rights. The court endorsed the ruling in Wyche v. State, 536 So.2d 272 (Fla. 3d DCA 1988) (no constitutional violation where petitioner subpoenaed to provide fingerprint samples without showing of reasonableness or probable cause), review denied, 544 So.2d 201 (Fla. 1989), and recognized conflict with Saracusa v. State, 528 So.2d 520 (Fla. 4th DCA 1988) (constitutional violation where petitioner subpoenaed to appear in lineup and submit blood samples without probable cause). Pace sought review, which we granted based on certified conflict.
The State argues that the district court decision should be approved based on the reasoning in Wyche. According to the State, the United States Supreme Court in United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), has decided the constitutional issue in the State's favor.
We agree that the key federal case on this issue is Dionisio,[1] wherein the United States Supreme Court analyzed a federal grand jury subpoena for voice exemplars in terms of its impact on protected privacy interests:

*615 Any [constitutional] violation in the present setting must rest on a lawless governmental intrusion upon the privacy of "persons"... . [This] Court [has] explained the protection afforded to "persons" ... and concluded that "wherever an individual may harbor a reasonable `expectation of privacy' ... he is entitled to be free from unreasonable governmental intrusion."
Dionisio, 410 U.S. at 8, 93 S.Ct. at 769 (citations omitted). The Court ruled that neither the directive compelling attendance to obtain the exemplars nor the actual obtaining of the exemplars violated protected privacy rights under the Fourth Amendment of the United States Constitution. According to the Court, compulsory attendance before the federal grand jury differs fundamentally from an arrest or investigative stop:
The latter is abrupt, is effected with force or the threat of it and often in demeaning circumstances, and, in the case of arrest, results in a record involving social stigma. A subpoena is served in the same manner as other legal process; it involves no stigma whatever; if the time for appearance is inconvenient, this can generally be altered; and it remains at all times under the control and supervision of a court.
Id. at 10, 93 S.Ct. at 770 (quoting United States v. Doe, 457 F.2d 895, 898 (2d Cir.1972), cert. denied, 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973)). Further, the actual taking of the exemplars does not implicate privacy interests because an individual has no reasonable expectation of privacy in his or her voice. The Court noted that the same is true of fingerprints. Id. 410 U.S. at 15, 93 S.Ct. at 772.
We note that the State clearly has a strong interest in gathering information relevant to an initial inquiry into suspected criminal activity, whether through use of the grand jury subpoena power or that of the statutorily empowered[2] state attorney. Such initial information gathering is
"indispensable to the administration of justice." Without it criminal activity could be hidden behind a "wall of silence" that finds no justification in legal privilege, but is based simply on an individual's desire not to get "involved," fear of retaliation, dislike for the substantive law, or private code against "snitching."
1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 8.6 (1984) (footnote omitted). Further, Florida's state attorney acts in noncapital investigations as a one-person grand jury, as explained by Judge Pearson in Wyche, and in order to function effectively in that role must be granted reasonable latitude:
... [I]t is generally recognized that the state attorney, in carrying out [his or] her responsibility of investigating and prosecuting violations of the criminal laws of this state, acts as a one-person grand jury. While there are unquestionably differences between a federal grand jury and a state attorney acting as a one-person grand jury, those differences do not lie in the area of the powers of either to investigate crimes committed within their respective jurisdictions. Thus, because a federal grand jury investigating possible criminal violations plainly has the right to request the issuance of a subpoena for the purpose of compelling a person to provide nontestimonial physical evidence, there is no impediment to a state attorney compelling the production of the same evidence when acting as the State's counterpart to a federal grand jury.
Wyche, 536 So.2d at 274 (citations omitted).
Based on the foregoing, we approve the decision of the court below in Doe. We approve Wyche and disapprove Saracusa.
It is so ordered.
OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
*616 BARKETT, C.J., dissents with an opinion, in which KOGAN, J., concurs.
SHAW, J., dissents with an opinion.
BARKETT, Chief Justice, dissenting.
The majority holds that when a person is compelled, under the threat of jail for contempt, to go to a prosecutor's office to give potentially self-incriminating evidence, that person has not been seized within the meaning of the Fourth Amendment. Because I cannot see the logic supporting such a conclusion, I dissent.
The Fourth Amendment permits the taking of fingerprints or handwriting exemplars when there has been a lawful Fourth Amendment seizure. I acknowledge that the taking of fingerprints or handwriting exemplars has not been deemed to be, in and of itself, a Fourth Amendment seizure, and that people legitimately seized could be compelled to give their fingerprints or handwriting exemplars. However, a person's seizure to give such evidence must comply with Fourth Amendment requirements. Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (police cannot transport suspect to stationhouse for fingerprinting without suspect's consent, probable cause, reasonable suspicion, or prior judicial approval); see also Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).
I can find no logical basis to constitutionally distinguish a physical seizure from the coercive pressure of compelling compliance, under threat of jail, with a state prosecutor's investigative subpoena. This is especially true given recent decisions holding that a suspect is seized under the Fourth Amendment when that person merely submits to the State's assertion of authority. See California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); State v. Curry, 621 So.2d 410 (Fla. 1993); Hollinger v. State, 620 So.2d 1242 (Fla. 1993). I do not read United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), or United States v. Euge, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980), as controlling precedent compelling a contrary conclusion.[3]
KOGAN, J., concurs.
SHAW, Justice, dissenting.
I would decide this case under our state, not federal, constitution for two reasons. First, federal caselaw on this matter is inapposite since it is based on the federal system wherein only a grand jury  not a prosecuting attorney  can issue a subpoena. And second, the issue itself is far more amenable to analysis under our state privacy provision than under the federal search and seizure clause.

1. Dionisio Inapposite
The majority's reliance on United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), is misplaced. That case by its own terms turns on the unique role the federal grand jury has traditionally played as an investigative body of ordinary citizens, "`acting independently of either prosecuting attorney or judge,' whose mission is to clear the innocent, no less than to bring to trial those who may be guilty." Id. at 15-16, 93 S.Ct. at 773 (citation omitted).
"Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that `the public .. . has a right to every man's evidence,' except for those persons protected by constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings."
Id. at 9, 93 S.Ct. at 769 (quoting Branzburg v. Hayes, 408 U.S. 665, 682, 92 S.Ct. 2646, 2657, 33 L.Ed.2d 626 (1972) (citations omitted). This is in sharp contrast to Florida procedure, wherein the chief law enforcement officer in the circuit, i.e., the state attorney, may issue a subpoena with no *617 grand jury or judicial oversight whatsoever.[4] The results reached in Dionisio and other federal subpoena cases are thus inapposite here since the interests driving the state attorney and federal grand jury are not necessarily convergent.

2. Fourth Amendment vs. Section 23
Because the federal constitution contains no express right of privacy, the judge-made right that has evolved under federal law is necessarily circumscribed. Accordingly, federal courts often forego privacy analysis altogether or attempt to bootstrap privacy issues into other, express, constitutional provisions, such as the Fourth Amendment's proscription against unreasonable searches and seizures. The analytical model that has evolved for examining search and seizure issues, i.e., whether a "search" or "seizure" has taken place, and if so, whether it was "unreasonable," flows directly from that amendment's language. While this federal model is well-suited for examining privacy issues embraced within the amendment's search and seizure language, it is ill-suited for analyzing those outside. Traditional search and seizure inquiry is unavailing when intrusive government action constitutes something other than a search or seizure as those words are commonly understood or where the usual gauges of reasonableness  "probable cause" or "reasonable suspicion"  miss the mark. Such cases fall more naturally under the "right to be let alone," set out in article I, section 23, Florida Constitution:
SECTION 23. Right of privacy.  Every natural person has the right to be let alone and free from governmental intrusion into his private life... .
Art. I, § 23, Fla. Const.
Rather than engaging in the legal gymnastics required to bootstrap the present facts into traditional Fourth Amendment analysis  deciding first whether the state attorney's subpoena constitutes a "seizure" for constitutional purposes and then whether it is "unreasonable"  it is far more simple and direct to proceed under section 23. For while a broad stretch of judicial license is required in order to say that the term "seizure" applies to subpoena cases at all (as the federal Court was constrained to say in Dionisio and other Fourth Amendment subpoena cases), common sense dictates that a subpoena's summons constitutes a significant infringement on one's "right to be let alone."
Florida's right of privacy yields where the government intrusion serves "a compelling state interest and [accomplishes] its goal through the use of the least intrusive means." Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla. 1985). Applying this standard to the present case, I conclude that the government action passes muster under the first prong, for the State clearly has a compelling interest in gathering information relevant to an initial inquiry into suspected criminal activity, whether through use of the grand jury subpoena or that of the statutorily empowered state attorney. As to the second prong, I conclude that the subpoena's directive to appear is sufficiently narrowly tailored to pass constitutional muster only if the information sought is relevant to a lawful investigation and the witness is reasonably implicated in that inquiry.

3. Conclusion
I would remand this case so the State can show in open court that the information sought is relevant to a lawful investigation and that Ms. Pace is reasonably implicated in that inquiry. I would then give Ms. Pace an opportunity to challenge the State's showing. If secrecy is key to the State's investigation, the State is always free to proceed through the traditional mechanism our society has *618 devised to balance the need for secrecy against the rights of the individual  the grand jury.
NOTES
[1] See also United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (Fourth Amendment not implicated in grand jury subpoena for handwriting exemplar). Cf. Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (Fourth Amendment violated where suspect accosted from front porch without consent, probable cause, or warrant and taken to station for fingerprinting); United States v. Euge, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980) (federal statute authorizing Internal Revenue Service to issue subpoenas includes authority to obtain handwriting exemplars); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (Fourth Amendment violated where twenty-four black youths were detained and fingerprinted without consent, probable cause, or warrant in sweep for rape suspect).
[2] See § 27.04, Fla. Stat. (1989).
[3] I note also that Florida law independently imposes certain minimal standards for investigative subpoenas. It is well established that a state attorney has the right to use the process of court, before or after formal charges have been filed, to summon and adduce the testimony of any person whom the state attorney "has reason to believe may have any information concerning the criminal cause under investigation ... so long as such examination is carried on in a lawful manner." Barnes v. State, 58 So.2d 157, 160 (Fla. 1952) (emphasis supplied).
[4] Our state system for issuing subpoenas differs substantially from the federal. All capital prosecutions in Florida must be brought by grand jury indictment, while prosecutions for lesser offenses may be brought by information issued by a state attorney. Art. I, § 15, Fla. Const. In those cases pursued by information, the state attorney may assume the initial investigative role otherwise played by the grand jury and has subpoena power. See § 27.04, Fla. Stat. (1989). All felony prosecutions under federal law, on the other hand, must be brought by grand jury indictment. U.S. Const. amend. V; Ex parte Wilson, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1885); Fed. R.Crim.P. 7. The federal grand jury has retained its investigative function and federal caselaw in this area, including United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), is limited largely to grand jury subpoenas.